UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DR. W.G. RAJESWARAN,

        Plaintiff,

v.

PHARMAFORCE, INC. AND PETER
STOELZLE,

        Defendants.

_____/

Case No. 10-11178

Honorable Nancy G. Edmunds

**OPINION AND ORDER DENYING DEFENDANTS' MOTION TO DISMISS FOR LACK
OF PERSONAL JURISDICTION OR, IN THE ALTERNATIVE, FOR TRANSFER OF
VENUE [4]**

Plaintiff Dr. W.G. Rajeswaran has filed a complaint against Defendants PharmaForce

Inc. and Peter Stoelzle, the Chief Operating Officer of PharmaForce.   The complaint

alleges that Defendants violated Ohio's Whistleblower Protection Act. It also alleges Ohio

state law claims of breach of contract/promissory estoppel, fraud in the inducement, and

unjust enrichment.   This matter is presently before the Court on Defendants' motion to

dismiss for lack of personal jurisdiction, brought pursuant to Fed. R. Civ. P. 12(b)(2), and,

in the alternative, for transfer of venue per 28 U.S.C. § 1404 (a).   For the reasons stated

below, this Court DENIES Defendants' motion.

**I.    Facts**

Plaintiff is currently a resident in Wayne County, Michigan and was formerly employed

as a lead, synthetic chemist by Defendant PharmaForce, a Delaware Corporation with its

principal place of business in Columbus, Ohio.   PharmaForce develops, manufactures, and

markets pharmaceutical products. (Compl. ¶¶ 1-2; Defs.' Mot., Ex. A, Stoelzle Decl. ¶¶ 3-4, 8.) Defendant Peter Stoelzle is also an Ohio citizen and Chief Operating Officer of Defendant PharmaForce.

Sometime in 2007, Plaintiff applied for a position with Defendant PharmaForce via a national job posting he accessed from his home in Michigan. (Pl.'s Resp., Ex. H, Pl.'s Decl. ¶¶ 2-3.) After a period of negotiation, on October 25, 2007, Plaintiff entered into an employment relationship with PharmaForce through an offer letter. (Compl. ¶ 5.) Prior to accepting the position, Plaintiff had one other employment offer which included stock options, bonus, 401K, profit sharing, and five more paid vacation days than his employment with PharmaForce. (*Id.* at ¶ 6.) Plaintiff's previous position with Pfizer Inc. also paid him $15,000 more than his job with PharmaForce. (*Id.* at ¶ 7.)

Before accepting employment with PharmaForce, Plaintiff contends that Defendants made specific oral promises via phone and e-mail to him in Michigan regarding compensation, promotion and job security.[1] These promises were made, he claims, to induce him to take a position with PharmaForce. (*Id.* at ¶ 9.) Plaintiff relied on these promises when making his decision to accept employment and was harmed when none of

---

[1]The alleged promises include promises made by Defendant Stoezle to Plaintiff in Michigan that Plaintiff's salary would substantially increase after he developed PharmaForce's first in-house active pharmaceutical ingredient (API), specifically that Plaintiff's original salary would be "peanuts" compared to his new salary. Plaintiff claims he was also told that PharmaForce had never fired or laid off any of its employees, and he was led to believe that his position was not "at-will." And when he asked about the bonus mentioned in the offer letter, he was allegedly told that his bonus would exceed his annual salary of $105,000. (Compl. ¶ 9.)

the oral promises were realized.  These broken promises give rise to Plaintiff's claims of breach of contract, promissory estoppel, fraud in the inducement, and unjust enrichment.

While Plaintiff was employed with PharmaForce, he claims Defendants made additional promises to convince him to stay.[2]  During this time, he also claims he was the subject of abuse and intimidation by Defendants, was required to do demeaning tasks, and work long hours (up to 60 hours a week), including work from his home in Michigan.  (*Id.* at ¶ 11; Pl.'s Decl. ¶ 12.)  Beginning in November 2007 and continuing through September 2009, Plaintiff made complaints to PharmaForce about OSHA and Good Manufacturing Practices (GMP) violations while working in PharmaForce's facility in Ohio. (Compl. ¶ 20.)  Plaintiff believes he was fired for two reasons: (1) he had outlived his usefulness, and (2) because PharmaForce, which was in the process of being bought out, was afraid Plaintiff would report the OSHA and GMP violations to the proper authorities, which would have been detrimental to the deal.[3]  (*Id.* at ¶¶ 30, 39.)  Plaintiff claims Defendants violated the Ohio Whistleblowers' Protection Act by firing him under these circumstances. Ohio Rev. Code Ann. § 4113.52.

Defendants PharmaForce and Stoelzle deny that they made the promises Plaintiff claims.  As to personal jurisdiction, Defendants argue that they have no general or specific contacts with Michigan. Defendants further argue that they have had no contacts with

---

[2]Plaintiff claims he was promised a $100,000 bonus when PharmaForce's BetaMehasone Acetate–Betamethasone Sodium Phosphate product was approved by the FDA, but Plaintiff never got the promised sum despite the product receiving approval in July 2009. (Compl. ¶ 10.)

[3]Plaintiff was fired on September 25, 2009. (Compl. ¶ 25.)

Plaintiff in Michigan.  Rather, their only contacts with Plaintiff were in Ohio during the work he did at PharmaForce's Ohio plant.  Defendants point out that they do not operate any offices in Michigan, own no real property in Michigan, conduct no business in Michigan, and do not solicit business from Michigan residents. (Stoelzle Decl. ¶ 5.) Although Defendant PharmaForce claims it ships its products to a number of wholesalers and distributors who do not have offices in Michigan, it does concede that it conducted $19,584.60 of direct business in Michigan in 2009. (*Id.* at ¶ 6; Defs.' Reply., Stoelzle Decl.  ¶ 3.)

Plaintiff, on the other hand, emphasizes that PharmaForce has had a pharmacy manufacturer/wholesaler license in Michigan since November 3, 2008, and Defendants' website, which is accessible in Michigan, indicates it takes orders for its products via phone, facsimile or email, suggesting that Defendants have done business in Michigan. (Pl.'s Resp., Ex. D, Pharm. Mich. License, Ex. E, Controlled Substance License, Ex. G, Website Ordering.)  Plaintiff also disputes Defendants' contention that it had no contacts with Plaintiff in Michigan.  First, during the recruiting stage, Plaintiff asserts that Defendants made at least three phone calls and sent a number of emails to him in Michigan. (Pl.'s Decl. ¶ 4.)  Second, Plaintiff asserts that Defendants promised him that if he moved to Ohio, PharmaForce  would pay him the difference between the current appraisal and original purchase price of his Michigan home. (*Id.* at ¶ 9.)  Third, Plaintiff asserts that he did a significant amount of work from his home in Michigan, work he claims was expected and required by Defendants PharmaForce and Stoezle. (*Id.* at ¶ 12.)  And finally, Plaintiff asserts that all correspondence between him and Defendants was sent to his Michigan

address, including check stubs and health insurance forms for him and his family. (*Id.* ¶ 13-15.)

## II.   Standard of Review

Plaintiff has the burden of establishing this Court's personal jurisdiction over Defendants. *Nationwide Mut'l Ins. Co. v. Tryg Int'l Ins. Co.*, 91 F.3d 790, 793 (6th Cir. 1996). When the Court does not conduct an evidentiary hearing on this issue when deciding a Rule 12(b)(2) motion to dismiss, Plaintiff "need only make a prima facie showing of jurisdiction." *CompuServe, Inc. v. Patterson*, 89 F.3d 1257, 1262 (6th Cir. 1996). Plaintiff can satisfy this burden by "establishing with reasonable particularity sufficient contacts between [Defendant] and the forum state to support jurisdiction." *Neogen Corp. v. Neo Gen Screening, Inc.*, 282 F.3d 883, 887 (6th Cir. 2002) (internal quotes and citation omitted).

In reviewing a motion to dismiss brought pursuant to Fed.R.Civ.P. 12(b)(2), the Court views the pleadings and affidavits in the light most favorable to Plaintiff. *Air Prods. and Controls*, *Inc. v. Safetech Int'l, Inc.*, 503 F.3d 544, 549 (6th Cir. 2007) (citing *Theunissen v. Matthews*, 935 F.2d 1454, 1459 (6th Cir. 1991)). The Court "will not consider facts proffered by the defendant that conflict with those offered by [Plaintiff] [.]" *Neogen*, 282 F.3d at 887 (citing *Serras v. First Tenn. Bank Nat'l Ass'n*, 875 F.2d 1212, 1214 (6th Cir. 1989)).


## III.   Analysis

### A.  Personal Jurisdiction

To establish personal jurisdiction in this diversity action, Plaintiff must show that the Court's exercise of personal jurisdiction is both (1) authorized by Michigan law, "the law of

the state in which it sits, and (2) in accordance with the Due Process Clause of the Fourteenth Amendment." *Neogen*, 282 F.3d at 888. If Plaintiff can show that PharmaForce's and Stoelzle's conduct falls within a provision of Michigan's long-arm statute, then Michigan law allows for the exercise of personal jurisdiction as far as due process permits. *Green v. Wilson*, 565 N.W.2d 813, 816 (Mich. 1997). In other words, once Plaintiff establishes that jurisdiction is proper under a provision of the long-arm statute, the state law and constitutional inquiries merge. *See Audi AG & Volkswagon of Am., Inc. v. D'Amato*, 341 F. Supp.2d 734, 742 (E.D.Mich. 2004).

### 1. Michigan's Long-Arm Statute

In Michigan, the exercise of personal jurisdiction over a non-resident may be general or limited. *Neogen*, 282 F.3d at 888 (citing Mich. Comp. Laws § 600.711 (general) and § 600.715 (limited)). General personal jurisdiction extends to a defendant "regardless of whether the claim at issue is related to its activities in the state or has an in-state effect," whereas limited personal jurisdiction "extends only to claims arising from the defendant's activities that were either within Michigan or had an in-state effect." *Neogen*, 282 F.3d at 888.

### a. General Jurisdiction Does not Exist Over Defendant PharmaForce

General personal jurisdiction exists over a corporation that is incorporated in Michigan, consents to jurisdiction in Michigan, or carries on "a continuous and systematic part of its general business within the state." Mich. Comp. Laws § 600.711. Defendant PharmaForce is incorporated in Delaware, has its principal place of business in Ohio, and has not consented to this forum's jurisdiction, so the analysis hinges on whether it "engages in continuous and systematic business in Michigan." Mich. Comp. Laws § 600.711.

6

Plaintiff fails to meet his burden for general personal jurisdiction as to Defendant PharmaForce. Plaintiff provides no legal or factual bases to support his argument that PharmaForce carries on continuous and systematic business in Michigan. First, Plaintiff has failed to detail the nature of Defendant PharmaForce's dealings in Michigan beyond the fact that it markets 35 FDA approved drugs throughout the U.S., has a website accessible in Michigan, and purportedly generated $500,000 of indirect revenue from sales in Michigan, a figure based on conjecture.[4] Plaintiff's inferences, absent some other supporting facts, are insufficient to support a claim of general jurisdiction. Second, Plaintiff's reference to *Burger King Corp. v. Rudzewicz*, 471 U.S. 462 (1985), is misguided here because that case relates to the analysis for limited personal jurisdiction. Plaintiff's broad statements, without any specific factual or legal support, fail to show that Defendant PharmaForce carries on "a continuous and systematic part of its general business within the state." Mich. Comp. Laws § 600.711. Accordingly, Plaintiff has not established that this Court may exercise general personal jurisdiction over this corporate Defendant pursuant to Mich. Comp. Laws § 600.711.

### b. General Jurisdiction Does not Exist Over Defendant Stoelzle

General personal jurisdiction exists over an individual in Michigan where the individual (1) is served with process in Michigan; (2) is domiciled in Michigan at the time of process; or (3) consents to jurisdiction in Michigan. Mich. Comp. Laws § 600.701. Plaintiff fails to assert any of the above grounds for general jurisdiction over Defendant Stoelzle. In fact,

---

[4] Plaintiff infers that because PharmaForce markets over 35 FDA approved drugs, has estimated revenues between $20 and $30 million, and a license to sell drugs in Michigan, it must have revenues in Michigan of around $500,000. (Pl.'s Resp., Ex. A, Bus. Article, Ex. B, PharmaForce Profile, Ex. C, Website Info.)

Stoelzle is not a resident of Michigan, does not own any real property in Michigan, was not served with process in Michigan, and has not consented to this Court's jurisdiction. (Stoelzle Decl. ¶ 7.)  Furthermore, even if Stoelzle were to be deemed an agent of PharmaForce, as Plaintiff claims, he is not subject to general jurisdiction because Plaintiff has failed to establish general jurisdiction over PharmaForce.

### c.  Limited Jurisdiction Exists Over Defendant PharmaForce

Michigan's long-arm statute provides for limited jurisdiction over corporations in claims arising out of the act or acts which create any of the following relationships:

(1) The transaction of any business within the state.
(2) The doing or causing any act to be done, or consequences to occur, in the state resulting in an action for tort.
(3) The ownership, use, or possession of any real or tangible personal property situated within the state.
(4) Contracting to insure any person, property, or risk located within this state at the time of contracting.
(5) Entering into a contract for services to be performed or for materials to be furnished in the state by the defendant.

Mich. Comp. Laws § 600.715.

Plaintiff has met his burden in showing that the Court has limited personal jurisdiction over Defendant PharmaForce because several of the claims he asserts against PharmaForce arise from its transaction of "business within the state."  Mich. Comp. Laws § 600.715(1).  This provision of the long-arm statute is satisfied by "the slightest act of business in Michigan." *Neogen,* 282 F.3d at 888 (internal quotation and citation omitted). Plaintiff asserts that, on more than one occasion in 2007, employees of Defendant PharmaForce communicated with him in Michigan on issues relating to his employment. These include the promises made to Plaintiff to induce him to become employed by PharmaForce and promises to pay potential relocation costs, specifically the cost

differential between the current appraisal of Plaintiff's home in Michigan and the price he paid for it. (Pl.'s Decl. ¶¶ 2-8). Plaintiff further asserts that, during his employment with PharmaForce, he conducted a significant amount of work from home; and Defendants sent correspondence, including check stubs and health insurance materials, to him at his Michigan residence. (Pl.'s Decl. ¶¶ 12-15.) These Michigan contacts give rise to Plaintiff's breach of contract, promissory estoppel, fraud in the inducement, and unjust enrichment claims. This is sufficient to satisfy the minimal requirements of Mich. Comp. Laws § 600,715(1).

### d. Limited Jurisdiction Exists over Defendant Stoelzle

Michigan's long-arm statute provides for limited jurisdiction over individuals in claims arising out of the act or acts which create any of the following relationships:

(1) The transaction of any business within the state.
(2) The doing or causing any act to be done, or consequences to occur, in the state resulting in an action for tort.
(3) The ownership, use, or possession of any real or tangible personal property situated within the state.
(4) Contracting to insure any person, property, or risk located within this state at the time of contracting.
(5) Entering into a contract for services to be performed or for materials to be furnished in the state by the defendant.
(6) Acting as a director, manager, trustee, or other officer of a corporation incorporated under the laws of, or having its principle place of business within this state.
(7) Maintaining a domicile in this state while subject to a marital or family relationship which is the basis of the claim for divorce, alimony, separate maintenance, property settlement, child support, or child custody.

Mich. Comp. Laws § 600.705.

Plaintiff has demonstrated that limited jurisdiction exists over Defendant Stoelzle because Plaintiff's claims against Stoelzle arise from business he has transacted "within

the state." Mich. Comp. Laws § 600.705. Prior to Plaintiff's employment with PharmaForce, he asserts that Stoelzle made at least three phone calls to him in Michigan regarding his position. Plaintiff further asserts that promises made by Stoelzle were subsequently broken, giving rise to the breach of contract, promissory estoppel, fraud in the inducement, and unjust enrichment claims asserted in his complaint. (Pl.'s Decl. ¶¶ 4,9.) Plaintiff also claims he was instructed by Stoelzle to work over 60 hours a week, a significant portion of which took place at Plaintiff's Michigan home. Plaintiff alleges that, while working from home, he corresponded with Stoelzle via email, further evidencing that Plaintiff was working for the benefit of Defendants PharmaForce and Stoelzle. (Pl.'s Decl. ¶ 12.) In light of the above, Plaintiff has satisfied the minimal standard for transacting "any business within the state." Mich. Comp. Laws § 600.705

### 2. Due Process Requirements are Satisfied as to Both Defendants

Even though limited personal jurisdiction is proper under Michigan's long arm statute, Plaintiff must also show that jurisdiction is constitutionally permissible. The Sixth Circuit has established that the due process determination entails a three-part inquiry:

> First, the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state. Second, the cause of action must arise from the defendant's activities there. Finally, the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable.

*Air Prods. and Controls*, 503 F.3d at 550 (quoting *S. Mach. Co. v. Mohasco Indus., Inc.*, 401 F.2d 374, 381 (6th Cir. 1968)). Plaintiff satisfies each element as to each Defendant.

### a. Purposeful Availment is Present Here

10

To be subject to personal jurisdiction, a defendant must "purposefully avail [] itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Kerry Steel, Inc. v. Paragon Indus., Inc.*, 106 F.3d 147, 150 (6th Cir. 1997) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475). The purposeful availment requirement "ensures that a defendant will not be haled into a jurisdiction solely as a result of 'random,' 'fortuitous' or 'attenuated contacts,' or of the 'unilateral activity of another party or third person.'" *Neogen*, 282 F.3d at 889 (quoting *Burger King*, 471 U.S. at 475). Purposeful availment is satisfied where "the contacts proximately result from actions by the defendant himself that create a 'substantial connection' with the forum state." *Air Prod. and Controls*, 503 F.3d at 551 (quoting *Burger King*, 471 U.S. at 475) (emphasis in original). A defendant's physical presence in the state is not required. *Id.* at 551 (citing *Burger King*, 471 U.S. at 475). A defendant's contract with an out-of-state party alone does not establish minimum contacts. *Kerry Steel*, 106 F.3d at 151 (citing *Burger King*, 471 U.S. at 478). The Court, however, must consider "prior negotiations and contemplated future consequences, along with the terms of the contract and the parties actual course of dealing[.]" *Calaphon Corp. v. Rowlette*, 228 F.3d 718, 722 (6th Cir. 2000) (quoting *Burger King*, 471 U.S. at 478).

The facts Plaintiff alleges demonstrate that Defendants PharmaForce and Stoelzle are not being haled into Michigan "solely as a result of 'random,' 'fortuitous' or 'attenuated contacts.'" *See Burger King*, 471 U.S. at 475. Although the employment contract between PharmaForce and Plaintiff alone does not establish minimum contacts, the "prior negotiations and contemplated future consequences," as well as "the parties' actual course

11

of dealing," satisfy the purposeful availment prong. *See id.* at 478. A majority of Plaintiff's claims arise from the negotiations leading up to his subsequent employment. Prior to the October 25, 2007 offer letter, Defendants PharmaForce and Stoelzle allegedly made false promises by phone and email to Plaintiff in Michigan to induce Plaintiff's employment.[5] (Pl.'s Decl. ¶ 4.) Moreover, after entering into employment with PharmaForce, Plaintiff claims he carried out a substantial amount of work for Defendants PharmaForce and Stoelzle from his home in Michigan, work that he claims was expected and required. (*Id.* at ¶ 12.) In light of these "prior negotiations" (the false promises made to Plaintiff in Michigan), "contemplated future consequences" (many of the promises were about future benefits to be bestowed on Plaintiff), and "actual course of dealing" (a substantial portion of work was done by Plaintiff at his home in Michigan), Plaintiff has satisfied the purposeful availment test as to Defendants PharmaForce and Stoelzle. *See Burger King*, 471 U.S. at 478.

The decisions Defendants rely upon for a contrary result are readily distinguished. Defendants rely on *Johnston v. Frank E. Basil, Inc.*, 802 F.2d 418,420 (11th Cir. 1989) for the proposition that a defendant does not purposely avail itself of a state's laws by simply recruiting and interviewing an individual in that state for work in another state. 802 F.2d at 420. That case involved an out-of-state employer who employed a resident of Alabama for work done entirely outside the state of Alabama. *Id.* That employer neither resided in, was licensed to do business in, or did business in Alabama, nor did it derive any income from within Alabama. *Id.* This case, on the other hand, involves an employer who allegedly had its employee do work in Michigan, who was licensed to do business in Michigan, and who

---

[5]Plaintiff claims that one of these phone calls regarded clarification of the promise of a potential bonus made by Defendants which never materialized. (Compl. ¶ 9.)

derived income from Michigan. *Johnston* also involved a contract that expressly stated that the parties intended to be governed by the law of the place of employment, which is missing in this case. *See id.*

Defendants also rely on *Scullen Steel Co. v. National Railway Utilization Corp.*, 676 F.2d 309, 314 (8th Cir. 1982), to argue that Defendants' alleged contacts with Plaintiff through e-mail and phone calls are insufficient to establish purposeful availment. *Id.* at 314. The court in *Scullen Steel*, however, only said "the use of interstate facilities such as the telephone and mail…cannot *alone* provide the minimum contacts required by due process," meaning additional factors, which are present here, can help overcome the deficiency. *See id.* (emphasis added).

### b. Plaintiff's Claims Arise From Defendants' Contacts With Michigan

As to the second prong of the due process determination, the Sixth Circuit has articulated the appropriate standard in various ways; i.e., "whether the causes of action were 'made possible by' or 'lie in the wake of' the defendant's contacts," or "whether the causes of action are 'related to' or 'connected with' the defendant's contacts with the forum state." *Air Prods. and Controls*, 503 F.3d at 553 (internal quotations and citations omitted). However stated, the standard is a lenient one, *id.*, and one that Plaintiff has satisfied. As discussed above, Plaintiff's breach of contract, fraud in the inducement, and unjust enrichment claims "are related to" and "connected with" PharmaForce's and Stoelzle's contacts with Michigan. These claims arise from PharmaForce's and Stoelzle's contacts with Michigan because Defendant's made promises to Plaintiff while he was in Michigan,

Plaintiff joined PharmaForce on the basis of those promises, and by breaking those promises Defendants were unjustly enriched by the work Plaintiff did for them, a significant amount of which was allegedly done at Plaintiff's home in Michigan.

Plaintiff's Ohio Whistleblower Protection Act claim does not arise out of PharmaForce's or Stoelzle's alleged actions in Michigan. This does not defeat personal jurisdiction. In cases where a court has personal jurisdiction over one claim and lacks independent personal jurisdiction for a second claim, that court will still have jurisdiction over the second claim if it arises from the same "nucleus of operative facts." *SunCoke Energy Inc. v. Man Ferrostaal Aktiengesellschaft*, 563 F.3d 211, 221 (6th Cir. 2009) (recognizing that pendent personal jurisdiction requires a common nucleus of operative facts between the claims); *United States v. Botefuhr*, 309 F.3d 1263, 1272 (10th Cir. 2002). "In essence, once a district court has personal jurisdiction over a defendant for one claim, it may 'piggyback' onto that claim other claims over which it lacks independent personal jurisdiction, provided that all the claims arise from the same facts as the claim over which it has proper personal jurisdiction." *Botefuhr*, 309 F.3d at 1272 (citing *Anderson v. Century Prods. Co.*, 943 F.Supp. 137, 145 (D.N.H. 1996)).

Plaintiff's Whistleblower claim arises out of the same "nucleus of operative facts" as his other claims; thus, it "piggybacks" onto the latter, jurisdictional claims. *See id.* Plaintiff alleges that he was fired shortly after having completed all the necessary sections of an Abbreviated New Drug Application for PharmaForce. This made PharmaForce more attractive to potential buyers. (Compl. ¶¶ 18-19.) Plaintiff further alleges that he was fired not only because he outlived his usefulness to Defendants, but also because Defendants

feared he would report and publicize the OHSA and GMA violations he had previously reported to them. (*Id.*at ¶ 39.) In other words, Defendants allegedly made false promises to Plaintiff in order to obtain the benefit of his employment, obtained that benefit, then discarded Plaintiff so Defendants would (1) not have to follow through on their promises to Plaintiff, and (2) would avoid potentially bad press that would arise from Plaintiff divulging any OSHA or GMA violations to the authorities, thereby avoiding any complications involving a pending sale of the business. Because it arises out of the same "nucleus of operative facts" as Plaintiff's other claims, this Court has jurisdiction over Plaintiff's Whistleblower claim. *See Botefuhr,* 309 F.3d at 1272.

**c. Exercise of Jurisdiction Over Defendants is Reasonable**

As to the third prong, the Court considers whether "the acts of the defendant or consequences caused by defendant ... have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable." *Air Prods. and Controls*, 503 F.3d at 554 (internal quotation and citation omitted). It is well-established that, "where, as here, the first two criterion are met, an inference of reasonableness arises and only the unusual case will not meet this third criteria." *Id.* (internal quotations and citations omitted). Factors considered by the Court in determining the reasonableness inquiry include:

> (1) the burden on the defendant;
> (2) the interest of the forum state;
> (3) the plaintiff's interest in obtaining relief; and
> (4) other states' interest in securing the most efficient resolution of the policy.

*Id.* at 554-55.

Any burden on PharmaForce or Stoelzle to travel to Michigan is outweighed by this State's interest in affording one of its citizens protection from Defendants' dealings with Plaintiff, many of which occurred in Michigan. In light of these circumstances, the exercise of jurisdiction over Defendants is reasonable.

In light of the above considerations, Defendants motion to dismiss for lack of personal jurisdiction is DENIED.

**B.    Transfer of Venue**

Defendants move, in the alternative, that this matter be transferred to the United States District Court for the Southern District of Ohio per 28 U.S.C. § 1391 (a) and 28 U.S.C. § 1404 (a). For the reasons stated below, this Court DENIES Defendants' motion.

To obtain a transfer of venue, the moving party has the burden of showing "that the balance of convenience ... *strongly* favor[s] it." *Comshare, Inc. v. Execucom Systems Corp.*, 593 F. Supp. 981, 985 (E.D.Mich. 1984) (emphasis added). Section 1404(a) provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). The district court deciding a § 1404(a) motion to transfer "has broad discretion to grant or deny" that motion. *Phelps v. McClellan*, 30 F.3d 658, 663 (6th Cir. 1994) (internal quote and citation omitted). The Court must determine whether (1) "the action could have been brought in the proposed transferee district," (2) "a transfer would promote the interests of justice," and (3) "a transfer would serve the parties'

16

and witnesses' convenience." *Amphion, Inc. v. Buckeye Elec. Co.*, 285 F. Supp.2d 943, 946 (E.D.Mich. 2003). It is the moving party's burden to show that § 1404(a)'s requirements are satisfied. *Id.* Defendants have not met their burden.

### 1. The Action Could Have Been Brought in Ohio

In a diversity action, venue is proper in "a judicial district where any defendant resides ... [or] judicial district in which a substantial part of the events or omissions giving rise to the claim occurred." 28 U.S.C. § 1391(a) (2000). Because Defendants' principal place of business is in Columbus, Ohio this case could have been brought in the Southern District of Ohio – the judicial district in which Defendants reside. *See Perceptron v. Silicon Video, Inc.*, 423 F. Supp.2d 722, 729 (E.D.Mich. 2006). Three of Plaintiff's four counts, however, arise out of events that occurred in Michigan, satisfying the second part of 28 U.S.C. § 1391 (a), i.e. jurisdiction is proper where "a substantial part of the events or omissions giving rise to the claim occurred."

### 2. A Transfer Would Not Promote the Interests of Justice

A transfer in this case would not promote the interests of justice because a majority of Plaintiff's claims arise from Defendants' contacts in Michigan. Further, Defendants' burden of defending itself in Michigan is smaller than Plaintiff's burden of bringing his case in the Southern District of Ohio because Defendants' means are much greater than Plaintiff's. Finally, as mentioned above, any burden on Defendants to travel to Michigan is outweighed by this Court's interest in protecting one of its citizens from the alleged conduct of Defendants in this case.

### 3. Convenience Factors and Plaintiff's Forum Choice

#### a. Parties Convenience

Adjudicating this case in the Eastern District of Michigan is more convenient for Plaintiff, and the Southern District of Ohio is more convenient for Defendants. "A transfer is not appropriate if the result is simply to shift the inconvenience from one party to another." *Audi AG & Volkswagen of Am., Inc. v. Izumi*, 204 F. Supp.2d 1014, 1023 (E.D.Mich. 2002). Thus, the Court should consider the convenience of the witnesses.

#### b. Witnesses' Convenience

Defendants argue that Ohio is the more convenient forum because all of its material witnesses reside in the Southern District of Ohio. (Def.'s Mot. at 12.) Plaintiff counters that, besides himself, his wife, and his expert witnesses, all who reside in Michigan, he plans on calling five current and former employees of PharmaForce, at least one of whom resides outside of Ohio. (Pl.'s Resp. at 19.) Thus, Plaintiff argues, Michigan is as convenient a location for non-party witnesses as Ohio. (*Id.*) Plaintiff emphasizes that there are a number of witnesses located in Michigan, only 179 miles separates the venues, and Defendants have substantial resources to undertake their defense in Michigan. (*Id.*) Neither party explains the relative importance of these witnesses besides noting that they are important. When faced with a question of transfer of venue, the Court "*may* examine facts outside the complaint but *must* draw all reasonable inferences and resolve factual conflicts in favor of Plaintiff." *Audi AG & Volkswagen of Am., Inc.*, 204 F. Supp.2d at 1016 (emphasis added). Moreover, the Court must accord weight to Plaintiff's choice of forum. *Comshare, Inc.*, 593

F. Supp. at 985. With this in mind, the Court finds that the convenience and choice of forum factors also weigh against transfer.

**IV.    Conclusion**

For the foregoing reasons, Defendants' motion to dismiss or, in the alternative, to transfer venue is DENIED.


s/Nancy G. Edmunds

Nancy G. Edmunds

United States District Judge


Dated:  July 12, 2010


I hereby certify that a copy of the foregoing document was served upon counsel of record on July 12, 2010, by electronic and/or ordinary mail.


s/Carol A. Hemeyer

Case Manager